**Duquesne Light Company v. Lippert**

David R. Cashman, for plaintiff.
John M. Silvestri, for defendant.

DOYLE, J., July 29, 1982 — At 4:38 a.m. on Saturday, November 19, 1977, defendant operated his automobile off a public roadway and smashed into a utility pole owned and maintained by plaintiff. At trial defendant admitted liability, but contested the amount of money damages demanded by plaintiff. Defendant's exceptions were dismissed by a court en banc.

Twelve minutes after defendant struck plaintiff's pole, plaintiff's construction foreman Carl Winters received a call to restore service and assembled a crew of four men and proceeded to the site of the disaster. Plaintiff struck a wood utility pole, known as "terminal pole" containing switch gear, overhead lines, crossarms, transformers, underground cables, underground switch gear, "pot heads" fuses, and lightning arrestors. The pole was completely broken off from its stump; overhead wires alone supporting its free hanging upper part.

Plaintiff's crew members were required to restore service over a two-square mile outage area, which was interrupted when the pole was struck. Intricate and time-consuming maneuvers were required by plaintiff's workmen, such as the use of "hot sticks" to maintain service in lines carrying 19 KVA. These hot sticks are several feet long and

enable skilled users to repair "hot lines." Two specially equipped trucks were required to elevate workmen to the lines being repaired and special flagmen, drivers, underground line equipment and a new pole were required to complete repairs. The repair job consumed a total of 9½ hours.

Plaintiff claims the following damages:

| | |
|---|---:|
| Materials | $ 191.96 |
| Drayage (trucks, etc.) | 402.13 |
| Labor | 1,472.09 |
| Pension Costs | 132.48 |
| Meals for workmen | 47.25 |
| | $2,245.91 |

The drayage used included one Troubleman's Van, one foreman's automobile, two bucket equipped trucks, one line truck, and one underground materials truck.

Defendant contends that the wages charged and the charges for vehicles are not proper items of legal damages. Defendant asserts that all the vehicles were owned by plaintiff and charges for their use would have been part of plaintiff's general cost of doing business whether vel non the pole was struck. Defendant argues that plaintiff should secure bids from other contractors to perform the services, the cost of which it seeks to recover from defendant and that the wages paid to the workmen involved in restoring service would have been paid to them in any event; therefore these items are not proper charges against defendant.

Defendant was afforded the opportunity to interview any of plaintiff's personnel to ascertain exactly how the charges for drayage, labor and pensions were computed. He delayed on several occasions, but finally accompanied plaintiff's counsel to defendant's principal office and was permitted to

question any person involved in the accounting department or any other department to ascertain the method of computation and validity of plaintiff's claims. He has now taken a step backwards and claims that even though the charges have been computed properly, they are not damages legally recoverable by plaintiff.

Not to put too fine a point on defendant's argument, we concluded that it is reductio ad absurdum. Plaintiff is required by the Public Utility Law of this Commonwealth to maintain service and to restore service as quickly as possible. Were plaintiff required to solicit bids and endure the gallimaufry of bidding procedures, service might yet not be restored to the households and business establishments in the two-square mile area affected by the outage. They would have no toast, no electrical controls to operate space heating furnaces, no operable electrical kitchen equipment and, like the boy in the Fisk Tyre advertisements, would be reduced to using candles in saucers to illuminate their homes. Thousands of tons of food would spoil in electrically powered refrigerators and other less exotic sequelae would result from such delays. At its high point, the argument is spurious.

We reject as a stultiloquy defendant's argument that charges for drayage would accrue whether vel non poles were struck. At best that argument is galimatias. To perform its obligation to restore interrupted service as quickly as possible, it is absolutely necessary that plaintiff have and maintain emergency equipment and trucks ready to roll within minutes after receivng a call to restore electrical service. Defendant's argument on the issue is amphigoric as is the argument that the laborers would have been paid in any event.

The fact which seems to escape defendant is the

obvious: Defendant caused the harm which required the repairs which required the use of materials, drayage, labor, etc., in an emergency situation. But for defendant's negligence, none of these expenditures would have been required. We therefore found in favor of plaintiff and against defendant in the full sum of $2,245.91.

We did not assess against defendant reasonable counsel fees of plaintiff to which it may well be entitled under the provision of 42 Pa.C.S.A. §2503, relating to right of a participant to receive counsel fees, paragraph (7) of which permits an award of counsel fees as a sanction for dilatory, obdurate or vexatious conduct during the pendency of a matter. An appellate court may wish to consider such matters.